**Robert HINTON et al., Appellants,**

v.

**John W. BYERLY et al., Appellees.**

Court of Appeals of Kentucky.

March 17, 1972.

As Modified on Denial of Rehearing
June 23, 1972.

Richard C. Porter, Jr., Louisville, for appellants.

Paul M. Lewis, Hatcher, Lewis & Bland, Elizabethtown, for appellees.

PALMORE, Judge.

This appeal presents a procedural jumble of unbelievable proportions involving the custody of Kaneta Ann Hinton, a small child who will be four years old on April 24, 1972. The appellants, Robert and Barbara Hinton, are her natural parents. The appellees, John W. and Barbara Byerly, who have physical custody of the child, are not related to her by blood or marriage. To avoid confusion, since they have the same first name, we shall refer to Barbara Hinton as Barbara and to Barbara Byerly as Mrs. Byerly.

The tug-of-war began with a habeas corpus proceeding (#9807C) initiated in the Hardin Circuit Court by Barbara Hinton against the Byerlys. With respect to this appeal, it culminated in a judgment dismissing Mrs. Hinton's habeas corpus action but retaining on the docket for future disposition an adoption proceeding (#9648A) filed by the Byerlys, which had been consolidated with #9807C and another habeas corpus proceeding (#9908C) brought by the Byerlys against Brooklawn Children's Home and its director, Donald A. Buchhold. The Hintons and Brooklawn Children's Home appealed, but the Brooklawn appeal was not pursued and has not been perfected.

No one questions whether this judgment disposing of only one among several consolidated actions is final and appealable under CR 52.01, but in view of its habeas corpus nature we shall treat it as such despite the trial court's omission to make it so in the manner provided by CR 54.02.

Except for two depositions the evidence considered by the trial court was not recorded and transcribed, and there is a dispute as to whether the two depositions were properly considered. The parties were unable to agree on a narrative statement as authorized by CR 75.13, so the trial judge prepared one from his own notes and recollections. This narrative obviously includes information which either was not supplied through testimony under oath or, if so, was incompetent, together with other observations and contributions of a nontestimonial character. As might be expected, a bystanders' bill was filed (CR 75.14), and despite technical objections to it the trial court made various corrections. In considering the narrative statement we have disregarded those portions which apparently do not reflect competent evidence and proceedings in the presence of the trial court.

Barbara and Robert Hinton have five children, of whom the youngest, Kaneta Ann, was born in 1968. Another child died on December 3, 1969, at the age of about two months. Barbara, the mother, was then 24 or 25 years old. Her husband, Robert, was in the penitentiary serving a term for storehouse breaking. (He was released during the pendency of the instant welter of litigation.) Barbara was living in Louisville, and in the early part of 1970 she made a change in residence and farmed her children out as follows: two boys to Brooklawn Children's Home in Louisville; another boy (Mark) to a family named Basham in Hardin County; a girl (Angela) to a family named Trumbo in Hardin County; and Kaneta Ann to Barbara's sister Peggy Van Pelt, in Versailles. Mark had previously lived with the Trumbos as a foster child under the auspices of the Baptist Children's Home at Glendale. During the course of the proceedings here in dispute the Bashams and Trumbos filed actions to adopt Mark and Angela, but without Barbara's consent.

Whether Barbara ever actually intended for any of the children to be legally adopted by anyone else is doubtful. She vigorously says not. Nevertheless, in February of 1970, when Peggy Van Pelt took charge of Kaneta Ann, Barbara signed an entry of appearance and consent to adoption in anticipation of Peggy's filing an adoption proceeding in the Woodford Circuit Court. At about the same time an order was entered by the Woodford County Court finding that Kaneta Ann was a dependent child and placing her in Peggy's custody. Peggy and her husband later decided against adopting Kaneta Ann and the contemplated adoption suit was never filed.

When the Van Pelts decided not to adopt Kaneta Ann, Peggy discussed the matter with her aunt, who knew the Trumbos. The aunt called Mrs. Trumbo to see if she could take Kaneta Ann in addition to Mark. Mrs. Trumbo was not able to do so, but through her and Mrs. Basham Peggy got in touch with the Byerlys. Mrs. Byerly had two children by a previous marriage, but she and Mr. Byerly had not been able to have a child together and

were interested in adopting one. Peggy made a trip or two to Hardin County to get acquainted with the Byerlys, following which, on April 6, 1970, she delivered Kaneta Ann to them. The evidence indicates that Barbara accompanied Peggy and Kaneta Ann to the Byerlys' home, though she denies it. In any event, she was aware of and acquiesced in the transfer of custody to the Byerlys.

Mrs. Byerly had received the impression from Peggy that the child was available for adoption, and it is possible that in the beginning Barbara did not make any effort to disabuse her of that notion, but as far as Barbara was concerned the arrangement was not permanent, and according to the narrative statement of evidence Mrs. Byerly concedes that Barbara "never did consent to this adoption or tell her to proceed with it."

Somewhere along the line after April 6, 1970, Barbara became apprehensive that if the Byerlys kept Kaneta Ann for more than 90 days they could adopt her, willy nilly, and these fears led her to seek counsel and fire the opening gun of the legal battle, which proceeded as follows:

(1) *June 18, 1970*—Petition for habeas corpus (#9807C), Hardin Circuit Court, Barbara Hinton against John W. and Barbara Byerly, demanding production of Kaneta Ann. (Meanwhile on June 16, 1970, the Department of Child Welfare had received from the Byerlys an application for permission to receive Kaneta Ann, per KRS 199.473.)

(2) *June 19, 1970*—Writ issued, returnable June 22, 1970. (Not served.)

(3) *June 23, 1970*—Second writ issued, returnable June 26, 1970. (Not served. The Byerlys were away on a vacation.)

(4) *June 26, 1970*—Barbara Hinton applied to Brooklawn Children's Home, in Louisville, for admission of Kaneta Ann.

(5) *July 6, 1970*—Barbara Hinton went to the Byerly home with two brothers and an uncle and retook possession of Kaneta Ann following some sort of an altercation with the Byerlys.

(6) *July 7, 1970*—Third writ issued, returnable July 16, 1970.

(7) *July 7, 1970*—Complaint for adoption (#9846A), Hardin Circuit Court, John W. and Barbara Byerly v. Kaneta Ann Hinton et al.

(8) *July 9, 1970*—Petition filed in Jefferson County Court, Juvenile Division, by Commonwealth ex rel. Barbara Hinton against Kaneta Ann Hinton to have her declared to be within the purview of KRS 208.020.

(9) *July 16, 1970*—Response filed by Byerlys in #9807C alleging [incorrectly, as it develops] that Barbara Hinton's parental rights had been judicially terminated and that Kaneta Ann's "guardian" had given her custody to the Byerlys for the purpose of adoption.

(10) *July 23, 1970*—Order of Hardin Circuit Court in #9807C reciting that evidence had been heard, adjudging that the Byerlys were entitled to the immediate custody and control of Kaneta Ann, and ordering Barbara Hinton "or any other person or agency having custody of said child" to deliver the child forthwith to the Byerlys.

(11) *July 29, 1970*—Answer filed by Barbara Hinton in the adoption proceeding of the Byerlys (#9846A), contesting the attempted adoption on the merits.

(12) *July 29, 1970*—Petition for habeas corpus, Hardin Circuit Court (#9908C), John W. and Barbara Byerly v. Brooklawn and its director, Donald Buchhold, demanding production of Kaneta Ann. Writ issued, directed to respondents in Jefferson County but requiring them to produce the child in the Hardin Circuit Court on August 6, 1970. [Note that KRS 419.030 requires the person detained to be brought before the circuit court of the county in which he is detained.]

(13) *August 5, 1970*—Order entered by Jefferson County Court, Juvenile Division, finding that Kaneta Ann comes within the purview of KRS 208.020 and granting temporary custody to Brooklawn. [See (8), above.]

(14) *August 5, 1970*—Order entered by Jefferson County Court, Juvenile Division, directing Brooklawn and Buchhold not to remove Kaneta Ann from Jefferson County "without further orders of this Court."

(15) *August 6, 1970*—Motion by Brooklawn and Buchhold in Hardin Circuit Court (#9908C) filing first Jefferson County Court order [see (13), above], contesting jurisdiction and venue of the Hardin Circuit Court, and moving for dismissal of #9908C.

(16) *August 6, 1970*—Motion by Byerlys in #9807C for rule adjudging Brooklawn, Buchhold, and one Ann Zollsberg in contempt for violating the order of July 23, 1970 [see (10), above].

(17) *August 12, 1970*—"On motion," order of Hardin Circuit Court consolidating #9807C and #9908C, the two habeas corpus actions. This order also holds that Buchhold's defense "that another court has attempted to take jurisdiction in this matter was of no avail," sets all motions for hearing on the next day, and directs Buchhold to have Kaneta Ann in court at that time.

(18) *August 13, 1970*—Copy of August 5, 1970, order of Jefferson County Court, Juvenile Division, prohibiting Kaneta Ann's removal from Jefferson County [see (14), above] filed in course of Hardin Circuit Court hearing. Barbara Hinton and Buchhold appeared with counsel but without Kaneta Ann. Judge of Hardin Circuit Court ordered Barbara Hinton and Buchhold to be physically detained until Kaneta Ann was delivered. Telephone calls were made to Louisville, and other personnel of Brooklawn produced Kaneta Ann some four hours later, whereupon the court forthwith gave her into the custody of the waiting Mrs. Byerly. [These proceedings are taken from the narrative statement of the trial court. They do not show up in the Clerk's record until December 18, 1970. See (27), below.]

(19) *August 17, 1970*—Appointment of guardian ad litem for Kaneta Ann in the adoption proceeding (#9846).

(20) *August 19, 1970*—Letter from Department of Child Welfare to Mr. and Mrs. Byerly in response to their letter of June 16, 1970 [see (1), above], stating, "The evaluation of your home had not been completed within the sixty days prescribed by Statute and thus, on a technical basis, the application *could be* [emphasis added] considered as having been approved by default," but that "We are asking our staff to proceed with the evaluation of your home, as a confidential report to the court will be filed in answer to your petition for adoption." The letter goes on to caution the Byerlys that Barbara Hinton "does not wish to have her child placed in your home and will not consent to an adoption," and that "you should understand that though the child is presently in your home, it is possible that she may not remain permanently with you or be adopted by you." [It should be noted that KRS 199.473 makes no provision for an approval "by default."]

(21) *August 20, 1970*—Motion by Barbara Hinton that she be awarded immediate custody of Kaneta Ann, to be brought on for hearing September 3, 1970.

(22) *September 15, 1970*—Discovery depositions of Peggy Van Pelt and Mrs. Trumbo taken by counsel for the Byerlys in #9807C, counsel for Mrs. Hinton present and participating. [These depositions were filed with the Hardin Circuit Court Clerk on September 28, 1970.]

(23) *October 6, 1970*—Confidential reports to Hardin Circuit Court by Department of Child Welfare approving adoption petitions of Trumbos and Bashams with reference to Mark and Angela, brother and sister of Kaneta Ann.

(24) *October 21, 1970*—Confidential report to Hardin Circuit Court by Department of Child Welfare recommending *against* placing Kaneta Ann with the Byerlys or with her mother.

(25) *December 11, 1970*—Writ of habeas corpus (#145162) issued by Jefferson Circuit Court in favor of Robert and Barbara Hinton against the Byerlys to produce Kaneta Ann before the Hardin Circuit Court on December 16, 1970. Cf. KRS 419.030.

(26) *December 18, 1970*—Response of Byerlys to (25), filed in Hardin Circuit Court, pleading among other things the pendency of # 9807C, the original habeas corpus action instituted by Barbara Hinton.

(27) *December 18, 1970*—Order of Hardin Circuit Court in consolidated actions #9807C and #9908C overruling the "motion concerning venue and jurisdiction" [see (15), above], holding Buchhold and Barbara Hinton in contempt, and directing them to remain in the jurisdiction of the court "until such time as the infant Kaneta Ann Hinton be delivered into the immediate custody of John W. Byerly and Barbara E. Byerly." [Evidently this order was nothing more than a formalization of what the narrative statement says had taken place on August 13, 1970. See (18), above.]

(28) *January 7, 1971*—Intervening complaint of Robert Hinton, filed by permission of court, demanding immediate custody of Kaneta Ann and requesting consolidation of all the pending actions.

(29) *January 8, 1971*—Motion by Byerlys to consolidate # 9846A, the adoption proceeding, with #9807C and #9908C, the two habeas corpus proceedings instituted in the Hardin Circuit Court. [No mention is made of # 145162, the habeas corpus action originating in the Jefferson Circuit Court and made returnable in the Hardin Circuit Court. See (25), above.]

(30) *January 20, 1971*—Response of Barbara Hinton objecting to consolidation of adoption proceeding with the habeas corpus cases.

(31) *January 21, 1971*—Order of Hardin Circuit Court consolidating # 9846A, # 9807C and # 9908C.

(32) *January 21, 1971*—Supplementary confidential report to Hardin Circuit Court by Department of Child Welfare recommending that temporary custody of Kaneta Ann be granted to the Department so that she might be placed with Edith Hinton Hutchens (a cousin of Robert Hinton) and her husband, Roger Hutchens (who live on a farm near Boston in Nelson County, Kentucky), under the supervision of Brooklawn Children's Home, an agency licensed by the Department. The report indicates that this arrangement meets the approval of the Hintons and the Hutchens family, will preserve the family relationships, and will be for the child's best interest. It notes that although the Hintons may be personally estranged (according to other information in the record Barbara Hinton intends to divorce Robert, marry another man, move to Campbellsville, and bring her children back together again), they strongly support each other on this problem; Robert Hinton is employed in Louisville; Barbara is living with her mother in Louisville and wants to secure employment as a waitress; and that both parents have strong feeling and concern for the child. Attached is a favorable report on the Hutchens family.

(33) *February 22, 1971*—Answer of Robert Hinton in #9846A, the adoption case, contesting the proposed adoption on the merits and on the technical ground that the complaint does not comply with the requirements of KRS Chapter 199. [Note for example, KRS 199.470(4), providing (subject to certain exceptions not applicable in this instance) that no petition for adoption shall be filed unless prior thereto the child has been placed for adoption by a licensed agency or the Department of Child Welfare, or has been placed with written approval of the Commissioner of

Child Welfare. See also Commonwealth, Dept. of Child Welfare v. Jarboe, Ky., 464 S.W.2d 287, 290-292 (1971).]

(34) *March 30, 1971*—Findings of fact, conclusions of law and judgment of Hardin Circuit Court "that the Writ of Habeas Corpus of Robert Hinton, and Barbara Hinton, his wife, be and they are hereby dismissed . . . . This action is retained on the docket . . . for ruling on the adoption petition heretofore filed." The caption of this document lists #9807C, #9908C, and #145162 [see (25), above], though we find nothing in the record consolidating #145162 with the other actions. The trial court found as a fact that Barbara Hinton had voluntarily abandoned and given Kaneta Ann away (to Peggy Van Pelt) and had agreed to her subsequently being placed with the Byerlys. It found that the reason for Barbara's giving the child away was that she was living with a bartender in Louisville and he did not want to be bothered with a child, but there is nothing in the narrative statement of evidence or in the depositions to support such a finding. Another finding to the effect that the Department of Child Welfare had found the Byerlys "suitable for adoption" is flatly contradicted by the record [see (24) and (32), above]. It is further found that the welfare of Kaneta Ann would be best served by leaving her with the Byerlys pending action on their adoption proceeding.

(35) *April 19, 1971*—Amended answer of Barbara Hinton in #9846A alleging that the adoption complaint does not comply with the requirements of KRS Ch. 199.

Among the rulings of law as listed in support of the judgment are (1) that the Hintons [sic], having submitted to the jurisdiction of the Hardin Circuit Court by there instituting a habeas corpus proceeding, could not defeat that jurisdiction by spiriting the child away into another county, (2) that the Byerlys "had proper and legal custody of the child," and (3) a repetition of the factual findings with respect

to the manner in which Kaneta Ann had come into possession of the Byerlys and with respect to her best interest and welfare pending culmination of the adoption proceeding.

Here ends the trial phase of the proceedings as now brought under review by this court. A good deal more controversy took place with respect to the record on appeal, but in the interest of getting on with the substantive business at hand we shall not discuss it.

Our recent opinion in Galloway v. Pruitt, Ky., 469 S.W.2d 556 (1971), expressed the view "that it is inappropriate and unrealistic that proceedings to determine the right of immediate possession of a child, *however denominated,* be consigned to the narrow confines of traditional habeas corpus." (Emphasis added.) Hence it was directed that proceedings for immediate custody of children should be more broadly considered, and the trial court may determine whether the proceeding should extend into "a full-blown hearing and adjudication on the ultimate entitlement to custody, based upon the best interests of the child and other considerations ·which may be applicable." 469 S.W.2d at 558.

The Hintons contend that this case should be decided on the narrower and more technical principles enunciated in Scott v. Scott, Ky., 445 S.W.2d 871 (1969). Actually, however, what Galloway v. Pruitt stands for is that regardless of how it begins, no child custody case should be tried in a straitjacket. Within the context of this case that principle means that in determining the rights of the contesting parties the welfare of the child is never an irrelevant issue. Cf. Manion v. Cofer, Ky., 459 S.W.2d 76, 79 (1970).

■ Whenever temporary custody is at issue, entitlement to permanent custody either is not in issue or remains to be determined in the future (usually, of course, the latter). At the stage of determining temporary custody alone, such considerations as

parental rights are bound to have greater weight than they will when the over-all welfare of the child is finally determined. That is the situation before us in this appeal, which involves temporary custody alone.

When the litigation began Kaneta Ann had lived with the Byerlys for only three months. By this time at least they must have realized her mother opposed an adoption. They had not received her custody in accordance with the requirements of KRS 199.473. Whatever may have been Barbara Hinton's position, as between her and the Byerlys it was legally superior.

■ We do not condone the manner and method by which Barbara took the law into her own hands in repossessing Kaneta Ann from the Byerlys, but it does not follow that she had no right to "defeat the jurisdiction" of the Hardin Circuit Court. The writ which she had sought had been issued and returned without service. [See (3), above.] The Hardin Circuit Court had not obtained jurisdiction in personam over the child or over the Byerlys. Its jurisdiction over the proceeding could have been terminated by a unilateral dismissal of the petition. CR 41.01(1). In taking possession of the child Barbara acted neither pursuant to nor in violation of any order of the Hardin Circuit Court, and it seems to us that her habeas corpus proceeding became moot when its objective had been accomplished by other means, whatever they were and regardless of what consequences they might have had in other proceedings.

There is no legal premise upon which it could be held that Kaneta Ann was in the unauthorized or wrongful possession of her mother when the Commonwealth proceeding was begun in the Jefferson County Juvenile Court on July 9, 1970. [See (8), above.] Unquestionably that court had jurisdiction of both Kaneta Ann and of the subject-matter, and there is nothing in the record to suggest that its judgment rendered on August 5, 1970, was not valid and

binding. [See (14), above.] Assuming (without deciding) that the writ of habeas corpus issued by the Hardin Circuit Court at the instance of the Byerlys on July 29, 1970 [see (12), above], was valid and effective and that their adoption proceeding [see (7), above] overrode the effect of the proceeding in the Jefferson Juvenile Court, there is still no legal basis upon which to say that the right of the natural parents should not have prevailed, except for their unsuitability or inability. That brings us to the crux of the legal problem.

■ A finding of unfitness or inability on the part of the natural parents necessarily amounts to a finding that the child's welfare requires that he be placed elsewhere. When such a placement is temporary, some consideration must be given to the prospect of what happens if in the end the other contesting parties are denied permanent custody. If they are, both they and the child would be better off if the child has not been in their custody during the interim. We do not suggest this proposition as an eternal truth; it depends on where the child is, and how long he has been there, when the moment for decision arrives on the question of temporary custody. In this case, when that question was first decided by the circuit court in July of 1970 [see (10), above], the association between Kaneta Ann and the Byerlys had been relatively brief, and a separation could not then have caused the emotional trauma it must now precipitate. To a lesser extent the same is true with respect to the time the judgment was entered, March 30, 1971 [see (34), above]. It is the passage of time since then that gives us extreme trouble. Obviously the emotional ties between Kaneta Ann and the Byerlys are bound to have grown. But if the judgment when made was erroneous, we cannot permit it to be made right by dead force of the law's delay.

■ Insofar as the judgment denies interim custody to the Hintons personally it cannot be faulted, because neither of them

is in a position to take care of the child and there is ample support for the trial court's finding that it would not be in the child's best interest. On the other hand, in the absence of some substantial reason to the contrary there is no reason why they should not have had the right to place her under the care of the Department of Child Welfare, as they sought to do. The Byerlys, despite their utmost sincerity, had no claim whatever except through the circumstance that the child had lived with them for a short time and they were seeking to adopt her. We do not suggest that this circumstance was without significance. Had the child been placed in their home with the permission of that Department, and in accordance with KRS 199.473, the case for leaving her there pending a permanent or indefinite disposition would have had more weight. More particularly would that have been so if the child had been placed with them in such a manner as to satisfy the requirements of KRS 199.470(4) with respect to a petition for adoption, for then at least the prospects of an adoption would have appeared more likely. As it is, however, these requirements had not been satisfied, and according to the record before this court it appears that the adoption proceeding is being carried on in the face of adverse recommendations by the Department of Child Welfare.*

Under the circumstances it is our opinion that the Hintons were entitled to have the immediate custody of Kaneta Ann placed under the direction of the Department of Child Welfare as recommended in the Department's supplementary report of January 21, 1971.

The judgment is reversed with directions that the custody of Kaneta Ann Hinton be placed with the Department of Child Welfare pending final determination of the adoption proceeding.

STEINFELD, C. J., and EDWARD P. HILL, Jr., MILLIKEN, OSBORNE and REED, JJ., concurring.

NEIKIRK, J., dissents.

NEIKIRK, Judge (dissenting).

Cutting through the legal technicalities asserted in the majority opinion and considered controlling, I would place the welfare of the child paramount to all other issues. In my opinion, the trial court exercised the better part of judicial wisdom in determining that immediate custody of the child should remain with John W. Byerly and his wife Barbara. This is especially true when one considers the determination in the light of the overt acts and deeds of all the parties and the adroit and successful maneuvering to cloud the real issues by the attorneys for all parties.

Until the Legislature determines that all original proceedings involving the welfare or custody of a child should be vested in a body other than in our present courts, the determination of such issues by a trial court should be controlling unless clearly erroneous.

In the instant case, the trial court had opportunity to observe and hear all persons involved; to judge the fitness of persons claiming immediate custody; and from all the maze judicially determined how the best interests, welfare, and immediate custody of the child could best be served. The child should not be permitted to become a pawn to be moved on a human chess board set up by adult contestants without regard to consideration of the child's right to be moved or to remain in place. The Hardin Circuit Court had original jurisdiction of the parties, as well as of the child. All other proceedings were subsequent thereto, and, in my opinion, were not of such import as to wrest from

---

* It should be explained that the Department's recommendations were based on factors having nothing to do with the moral fitness of the Byerlys or with their ability to provide for the child.

the Hardin Circuit Court the legal right to adjudicate the issue of the immediate custody of the child and reserve the issue of permanent custody to be determined in a proper proceeding in the same forum. I am not persuaded that the immediate welfare and best interests of the child involved can best be accomplished by this court's placing the custody of the child with the Department of Child Welfare. To me, the report of the Department of Child Welfare dated January 21, 1971, was advisory, and the trial court chose not to accept the advice. This was not a clear abuse of discretion. As between the report of the Department of Child Welfare and the finding of the trial court, I would accept the latter.

For these reasons I respectfully dissent. I would affirm the judgment of the Hardin Circuit Court.