v.

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky; A.D.; K.D.; and M.K., a Child, Appellees**

**NO. 2016-CA-000139-ME**

Court of Appeals of Kentucky.

MAY 19, 2017; 10:00 A.M.

Discretionary Review Denied by Supreme Court October 25, 2017

BRIEF FOR APPELLANT: Kimberly C. Morton, Maysville, Kentucky.

BRIEF FOR APPELLEE, COMMONWEALTH OF KENTUCKY, CABINET FOR HEALTH AND FAMILY SERVICES: Jacqueline S. Wright, Maysville, Kentucky.

BRIEF FOR APPELLEE, A.D.: Laken Gilbert, Maysville, Kentucky.

· BRIEF FOR APPELLEE, K.D.: Debra S. Rigg, Newport, Kentucky.

BEFORE: J. LAMBERT, MAZE, AND THOMPSON, JUDGES.

## OPINION

MAZE, JUDGE:

C.K. appeals from the Mason Circuit Court's denial of his petition for immediate entitlement to custody of his daughter M.K. He argues that the trial court failed to conduct the proper legal analysis before it denied his petition. We affirm the circuit court.

### Background

On the morning of October 20, 2015, seven-year-old M.K.'s home in Maysville, Kentucky was destroyed by fire. Although M.K. managed to escape, the fire claimed the lives of her mother and her brothers. Shortly thereafter, social workers with the Commonwealth of Kentucky Cabinet for Health and Family Services (hereinafter "the Cabinet") secured an emergency custody order granting temporary custody of M.K. to the Cabinet and placing M.K. with her maternal grandmother (hereinafter

"grandmother"). M.K.'s father, C.K. (hereinafter "Father"), lives in South Carolina, and neither the Cabinet nor the child's Kentucky family knew Father's contact information. At the time of the fire, Father had not visited M.K. in more than two years.

One day after securing the emergency custody order, the Cabinet filed a petition alleging dependency in Mason District Court. Father was present at the corresponding temporary removal hearing on October 22, 2015, and he requested custody of M.K. with the intention of eventually taking her back to South Carolina. The district court nevertheless concluded that it was in M.K.'s best interests that grandmother have temporary custody, citing the fact that Father had not visited in-person with M.K. in over two years. In addition, the district court pointed out that M.K. had never been to South Carolina. However, the court ordered a background check on Father and a home evaluation for Father's home in South Carolina. The district court also ordered daily, face-to-face contact between Father and M.K. either in-person in Mason County or via telephone or Skype. Father availed himself fully of these visitation rights.

Following the temporary removal hearing, Father filed a petition for immediate entitlement to custody pursuant to KRS[1] 620.110. During a hearing on the petition, the Mason Circuit Court heard extensive testimony from many interested parties and counsel, including Father, Father's wife, grandmother, Meagan Patton, M.K.'s school guidance counselor, and M.K.'s guardian *ad litem* (GAL). Grandmother testified that, prior to the fire, she typically saw M.K. on a daily basis, because her daughter frequently needed her help with child care. Meagan Patton, a social worker with the Cabinet, testified that M.K. had

personal items at her grandmother's home and it was obvious that she spent time there prior to the house fire. She also testified M.K. was "probably the most traumatized child I've ever interviewed in my five years of doing this occupation," and Ms. Patton asserted that M.K. needed as many bonds to as many people as possible following her horrific loss.

In his testimony, Father admitted he had not seen M.K. in person since February or March of 2013, but he attributed this fact to the cost of traveling to Kentucky. He also stated that he had repeatedly attempted to call M.K. during that time, but that the child's late mother would not answer his calls. Finally, Father acknowledged on cross-examination that it would not be in M.K.'s best interest to take her back to South Carolina immediately, and he indicated that a period of transition was appropriate. During the case, Father had taken up temporary residence in Mason County where, presumably, he would stay during this transition period.

The circuit court denied Father's petition and issued findings of fact, conclusions of law, and judgment on December 9, 2015. The court made no finding as to Father's fitness as a parent, but stressed that grandmother was M.K.'s only close relative who could be found when M.K.'s mother and siblings died. The circuit court observed that grandmother and M.K. shared a close bond, while Father had not been in his daughter's life for at least two years. The court acknowledged that Father would likely receive custody of M.K. in the future due to the law's preference for parental custody. However, the court concluded that removing M.K. from grandmother at that time would inflict further trauma on the child. Based on these findings and

---

1.  Kentucky Revised Statutes.

conclusions, the circuit court held that the district court's award of custody was not clearly erroneous. Upon Father's request, the circuit court amended its factual findings in a supplemental order, but declined to amend its legal conclusions or the ultimate result of the original order. Father now appeals as a matter of right.

## Standard of Review

■ "Pursuant to KRS 620.110, any person aggrieved by the issuance of a temporary order may appeal that decision." *B.C. v. B.T.*, 182 S.W.3d 213, 220 (Ky. App. 2005). Petitions for immediate entitlement under KRS 620.110 are not considered appeals of the temporary order of removal, however, but are considered original actions "in the nature of *habeas corpus.*" *B.D. v. Commonwealth, Cabinet for Health and Family Services*, 426 S.W.3d 621, 623 (Ky. App. 2014) (quoting *Moore v. Dawson*, 531 S.W.2d 259, 262 (Ky. 1975)). Nevertheless, "in reviewing the decision of the [trial] court, the test is not whether the appellate court would have decided it differently, but whether the findings of the [trial] court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *B.C.*, 182 S.W.3d at 219-20 (citation omitted). We proceed accordingly.

## Analysis

The crux of Father's argument on appeal is that parents are constitutionally entitled to the care, custody, and control of their children, absent a finding of unfitness. Father cites a number of cases in support of this proposition, including: *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Vinson v. Sorrell*, 136 S.W.3d 465 (Ky. 2004); and *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). Because no court found Father to be unfit for custody, he contends the circuit

court erred in denying his petition for immediate entitlement to custody. Father's constitutional arguments are misplaced in the context of this case.

■ As it appears to this Court, a petition for immediate entitlement to custody is an under-utilized tool that KRS 620.110 provides to parents who are unhappy with a district or family court's decision regarding temporary custody following a temporary removal hearing. The clear object of the statute is to permit parents to seek relief from a temporary order. This object is achieved by treating a parent's petition pursuant to KRS 620.110 not as an appeal of the district or family court's order, but as an original action. However, as the circuit court pointed out in its order, there has been little, if any, case law regarding what standard must be applied to such a petition. The question presented in this appeal can be reduced to whether, upon filing a petition for immediate entitlement, a parent implicates a higher standard founded in his constitutional rights as a parent, or whether the same "best interests" standard the district or family court applied must govern.

Father filed his petition in response to the district court's temporary custody order which followed a removal hearing conducted pursuant to KRS 620.080. However, he maintains that in the original action arising from his petition, the circuit court should have applied standards which lie outside Kentucky's juvenile code and which are far more rigorous, including the requirement that the trial court make a finding of his fitness to parent his child. This cannot be the effect of filing a petition for immediate entitlement.

■ In recognition of the often emergent and always solemn circumstances unique to dependency, neglect, and abuse cases, Chapter 620 does not require the rigorous analysis Father submits on ap-

peal. At a removal hearing, a district or family court is charged with determining whether there are "reasonable grounds to believe the child is dependent...." KRS 620.090(1). Having decided such grounds exist, the same statute mandates that a court issue a temporary custody order granting custody "to the cabinet or other appropriate person or agency. Preference shall be given to available and qualified relatives of the child considering the wishes of the parent.... The court may recommend placement for the child." *Id.* Unlike the cases Father cites, Kentucky's dependency, neglect, and abuse statutes, place their emphasis on "the health, safety, and overall well-being of the child." *N.L. v. W.F.*, 368 S.W.3d 136, 147 (Ky. App. 2012), citing KRS 620.010. This is by design, and it is out of necessity. The custody rights of parents, while important, are not the trial court's priority in such cases. *N.L.*, 368 S.W.3d at 147.

■ The appropriate legal consideration on a petition for immediate entitlement to custody following removal of a child under KRS 620.080 is, and must be, that which is announced within the juvenile code. Notwithstanding the fact that a petition for immediate entitlement is treated as an original action akin to a writ of *habeas corpus*, it would be legally impractical to apply one standard at removal and another, far more exacting standard upon a circuit court's review of the very same circumstances. The juvenile code, and specifically its provision for removal and the temporary orders which usually ensue, "strikes the balance between parental rights and child protection by erring on the side of child protection." 15 Graham & Keller, *Kentucky Practice, Domestic Relations Law*, § 15.10 at 512 (2nd ed. 2000). Father's proposed standard on a petition for immediate entitlement would greatly shift this balance to the benefit of parents

with little or no regard for the best interests of their children. This cannot be the law. Rather, it remains the case that "[i]n determining the temporary custody of a child found to be dependent, neglected, or abused, the family court shall make its determination based on the best interests of the child." *B.C.*, 182 S.W.3d at 218 (citation omitted).

■ It then remains for us to determine whether substantial evidence supported the circuit court's findings of fact and ultimate ruling regarding M.K.'s best interests. We hold that it did. The circuit court correctly held, and it was uncontested, that Father had not seen his daughter in a matter of years, that M.K. was close to grandmother, and that M.K. was well-adapted and familiar with her school and other surroundings in Maysville. Testimony, including that of Father, supported these findings. With the best interests of M.K. in mind, considering the trauma through which she had recently lived and the coming adjustments, to her mother's absence and her Father's presence, we cannot deem erroneous the circuit court's intention to ease M.K.—a child of eight—into this new reality. Not only does the evidence of record support the circuit court's conclusions; this seems precisely the situation where the legal balance of which we speak *supra*, between parents' rights and the protection of children, must be struck in favor of the latter.

## Conclusion

This case arose from horrific circumstances, and difficult decisions have followed. Furthermore, we cannot overemphasize the temporary nature of both the custody order at the heart of this case as well as the circumstances giving rise to it. While this Court hopes Father continues to play a vital role in M.K.'s life, and proves, as the circuit court predicted, a

worthy custodian in the future, we cannot say the circuit court erred in holding that, as of its January 25, 2016, order, M.K.'s best interests were served by grandmother retaining custody. The evidence supports such a finding. Therefore, we affirm the Mason Circuit Court's order denying Father's motion for immediate entitlement to custody.

ALL CONCUR.