RENDERED: MARCH 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1247-MR

FLORENCE BAKER AND ERIC
JUSTUS                                                                    APPELLANTS


                           APPEAL FROM JEFFERSON CIRCUIT COURT
v.                         HONORABLE ANGELA JOHNSON, JUDGE
                           ACTION NO. 19-CI-502952


RACHEL KUFFNER AND CASEY
KUFFNER                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Florence Baker and Eric Justus appeal from the

Jefferson Family Court's denial of Baker's motion for immediate possession of

C.R.B. (child) from Rachel Kuffner and Casey Kuffner, who have guardianship of

child through a Jefferson District Court order in *In re of: C.R.B. Guardian*, No. 19-

P-003594. We affirm the denial of this motion as the family court's decision was

amply supported by evidence indicating it is currently in child's best interest to remain with the Kuffners and because matters related to whether the guardianship was fraudulently obtained are best addressed in the district court.

This case is a poster child for the continued problems of not dealing with all matters relative to guardianship/custody of children within the family courts. District courts are still empowered to deal with guardianship matters regarding children, while family courts deal with custody matters. This dichotomy leads to parties seeking to overturn what one court has done by filing an action in another court which can result in inconsistent rulings. In the interest of providing a complete accounting of the events regarding guardianship and custody of child, we provide a brief history of relevant proceedings in all courts.

In June 2016, child was born to married couple Lonnie Baker and Nicole Baker (collectively parents). At the time of their marriage, parents were friends with the Kuffners. Baker is Lonnie's mother and child's grandmother. Justus is Lonnie's brother and child's uncle.

In June 2017, Lonnie died in the hospital. A year later, a medical malpractice action for Lonnie's death was initiated on behalf of his estate, child

and Nicole. In February 2021, one of the doctors settled for a confidential amount which was approved by the circuit court.[1]

After Lonnie's death, later in 2017, Nicole obtained a $500,000 life insurance policy and named the Kuffners as the beneficiaries. Nicole also named Rachel Kuffner as the beneficiary of her employer provided life insurance policy and her 401(k).

On July 25, 2019, Nicole died after accidentally falling to her death while hiking.[2] This occurred while Nicole and child were on vacation in Hawaii with the Kuffners. Casey Kuffner was appointed as administrator of Nicole's estate and was subsequently substituted for Nicole as administrator of Lonnie's estate.

According to Baker's testimony,[3] she was unable to take possession of child when the Kuffners returned with child from Hawaii because Casey claimed the Kuffners had been granted custody of child from a court in Hawaii, which

---

[1] This litigation is still ongoing. *See Kuffner v. Saint Joseph Health System, Inc.*, No. 2021-CA-0168-MR, 2022 WL 414106 (Ky.App. Feb. 11, 2022) (unpublished) (reversing and remanding the dismissal of the hospital on summary judgment grounds) (motion for discretionary review filed Mar. 15, 2022).

[2] While Baker and Justus state circumstances which make them suspicious about the cause of Nicole's death, there appears to be no evidence that Nicole's death was anything other than a tragic accident.

[3] We refer to Baker's testimony, which she gave in the hearing regarding her motion for immediate possession of child to support her allegations, on appeal as most of the district court records which she alleges support her position are not part of the record.

Baker believes is false. Baker testified she wanted to pick up child from the airport but did not attempt that given what Casey had told her. Baker also testified Casey told her that he thought he was the executor of Nicole's estate.

Baker testified she was able to see child after the Kuffners returned with her from Hawaii but believed she could not take child with her because they had custody. She testified that Rachel told her during this visit that the Kuffners were the beneficiaries of Nicole's life insurance policy.

On July 29, 2019, Rachel signed an application for appointment as guardian for minor child and this application (along with a petition for appointment) was filed the following day. The application for appointment as guardian is the only portion of the district court record that was made part of the circuit court record on appeal.

On July 31, 2019, the district court appointed the Kuffners, who are non-relatives, as temporary guardians of child. Baker and Justus allege while the district court was informed about some of child's relatives who did not want to claim guardianship of child, that the district court was not informed about their existence or Baker's interest in taking guardianship of child as is required by Kentucky Revised Statutes (KRS) 387.025.

Baker testified she was not informed that the Kuffners had filed to be appointed as child's guardian or when there was a court date on that. Baker

-4-

testified she did not find out that the Kuffners were appointed as child's guardians until she consulted with an attorney in late August of 2019. Baker testified she was unaware of a second court date on August 21, 2019, concerning guardianship.

On September 27, 2019, Baker filed a petition for sole custody of child before the family court, rather than attempting to intervene and participate in the district court guardianship action. Baker also requested temporary visitation. On October 16, 2019, the Kuffners responded and filed a counter-petition for sole custody with the family court. According to Baker, she was permitted limited supervised visitation by the Kuffners but was unhappy with this arrangement.

On February 25, 2020, again before the family court, Baker filed a motion for "immediate possession of her granddaughter" and for the first time she alleged:

> [The Kuffners] obtained guardianship by misrepresenting to the Jefferson District Court that [Baker] had no objection to their guardianship request; and they simultaneously failed to disclose the child's substantial estate in their application to the Jefferson District Court, thereby perpetrating a fraud on that Court.

It is the resolution of this motion that is before us on appeal.

Also, on February 25, 2020, Justus moved to intervene in the family court action to seek either joint legal custody with Baker or sole legal custody. On March 25, 2020, the family court permitted Justus to intervene and Justus filed a

-5-

petition for custody, either sole or joint with Baker. Baker filed a new petition for custody in which she continued to request sole custody.

Due to COVID-19, a hearing on Baker's motion for immediate possession of child was delayed until June 3, 2020. At the hearing, the family court heard testimony from Baker, Casey, Rachel, child's therapist Leanne Gardner, and child's maternal grandmother Joyce Raymond.

While awaiting the results of this hearing, on June 9, 2020, Baker and Justus filed a motion in the district court guardianship action, seeking to remove the Kuffners as child's guardian.

On August 28, 2020, the family court's order denying the motion for immediate possession was entered. In the family court's findings of fact and conclusions of law, the family court noted evidence supporting the fact that Lonnie and Nicole were close friends with the Kuffners both before and after Lonnie's death: (1) Casey attended Lonnie's and Nicole's private wedding, signed the wedding certificate (along with Baker), and then the Kuffners later attended Lonnie's and Nicole's destination wedding (along with Baker and Justus) with Casey serving as Lonnie's best man and the Kuffners' daughter also being in the wedding; (2) Casey and Lonnie began a joint business venture together and owned property and a business together, and Jennifer Baker (Lonnie's sister) rents out one of the properties owned by Casey and Lonnie; (3) the Kuffners had Lonnie and

Nicole over for dinner about three to four times per week and, after Lonnie's death, had Nicole and child over for dinner around five nights per week and the Kuffners, Nicole, and child would do weekend activities together; (4) Rachel assisted Nicole with daycare after Lonnie died by watching child full-time for four or five months and then part-time after child began attending daycare; and (5) Rachel would talk to Nicole about eight times a day. The family court also noted evidence that Baker was close to Lonnie, Nicole, and child: (1) Baker visited with child every three to four weeks since her birth, staying with Lonnie and Nicole; (2) after Lonnie's death, Justus routinely drove Baker to visit with Nicole and child and Baker had a great relationship with child and would read and play games with her.

The family court recounted the parties' concerns about who should raise child, with Baker being concerned that the Kuffners were after financial gain from Nicole's life insurance policy, and from Lonnie's and Nicole's estates, while the Kuffners believed Baker could not keep up with the physical demands of raising child or handle her other needs. However, there was absolutely no evidence in the record that Baker could not take care of child other than their testimony and supposition. The family court explained that the Kuffners believe that child is best off in their home as she is like one of their children and gets along well with their other children, while Baker believes child is best off in her care as child is Baker's only grandchild and Baker loves her as her own child. The family

court also recounted lay testimony by child's therapist (who the Kuffners hired) that she believes child is well bonded with the Kuffners, child looks to them for reassurance, and the therapist believes the Kuffners are very patient and encouraging with child.

After explaining the narrow scope of the petition for immediate possession, the family court declined the motion, explaining as follows:

> [Baker and Justus] would like this Court to find that Nicole appointing the [Kuffners] as administrator of her estate, putting insurance policies in their names, and overall making them responsible should the worst happen to her, indicates that they are manipulative and money-driven when in fact it demonstrates to this Court that Nicole held them in high regard as trust[ed], close friends. [Baker's and Justus'] case-in-chief was so consumed with vilifying the [Kuffners] that there is little evidence regarding [Baker's and Justus'] relationship with the child and Mr. Justus did not even testify.
>
> The Court believes the child is in a loving home with people she has known throughout her life. The Kuffners were very close friends of Lonnie and Nicole and were trusted with business dealings, childcare, and posthumous matters. The Kuffners live in Louisville, where the child has lived her whole life. The Kuffners have the ability and the means to care for the child. This Court believes that Ms. Baker love[s] [child] very much, but that is not enough to remove the child from the Kuffner[s'] home and disturb her life to place her with [Baker and Justus], at this time. The child is very young and is working with her therapist to deal with the trauma related to the death of her parents and since the child's wellbeing is not in danger with the Kuffners, then this Court does not believe it needs to disrupt the child's life

-8-

at this point. This does not serve as any indication that [Baker and Justus] cannot have contact with the child.

The family court made this order immediately appealable. Baker and Justus filed a motion to alter, amend, or vacate and for specific findings of fact. The family court denied this motion and Baker and Justus appealed.

While the family court's order denying the motion for immediate possession was pending before us on appeal, additional action took place in both the district court and family court actions.

In the district court action, a hearing was held on the motion to remove the Kuffners as child's guardians. The motion was denied on February 1, 2021 and Baker and Justus appealed to the circuit court. As this was an appeal of a district court matter, *Baker v. Kuffner*, No. 21-XX-000015, was not assigned to the family court and so a different circuit court judge handled this appeal.

In the family court action, Baker and Justus requested visitation, but only Baker was granted visitation pursuant to KRS 405.021 (the grandparent visitation statute) in a temporary order entered on March 29, 2021, after the family court found that visitation was in child's best interest. Under this order, Baker was permitted three Facetime calls per week for fifteen minutes and an in-person visit

once a month for four hours. The family court also appointed a guardian *ad litem* (GAL) for child.[4]

The Kuffners then filed a motion for *de facto* custody in the family court action. In an order entered on July 14, 2021, the family court explained some of the problems with such a motion considering that no parent was involved and its belief that they could not be *de facto* custodians, but ultimately remanded, stating that it would be more appropriate for this motion to be considered in a hearing for custody. On August 3, 2021, the Kuffners next filed a motion for custody, which has not yet been heard.

In an order entered on December 21, 2021, the family court ordered that Baker's in-person visitation with child be suspended and Baker be limited to Facetime calls one time per week for fifteen minutes, based on an acrimonious incident between the Kuffners and Baker during visitation in which the family court stated Baker made "inappropriate comments directly to the child regarding her biological parents, the Kuffners, and this litigation." The family court stated this order could be revisited in three months' time.

Meanwhile, on January 13, 2022, a decision was rendered in the appeal of the district court matter, *Baker v. Kuffner*, No. 21-XX-000015. The

---

[4] We believe it would have been helpful had a GAL been appointed sooner, ideally in time to weigh in on the motion for immediate possession but recognize that COVID-19 made typical court operations and contact with others difficult.

circuit court remanded to the district court for it to consider whether there was fraud in the initial guardianship proceedings for failing to notify Baker and Justus or gain their consent and, if so, whether pursuant to Kentucky Rules of Civil Procedure (CR) 60.02, in its discretion this merited setting aside the order appointing the Kuffners as guardians of child. This order is not final as the Kuffners filed a motion to alter, amend, or vacate.

We now address whether the family court properly denied Baker's motion for the immediate possession of child. Baker and Justus argue that Baker was entitled to the immediate possession of child because the Kuffners took possession of child due to fraud in the district court matter in not naming Baker and Justus as next of kin. Baker and Justus allege the Kuffners purposely failed to give them appropriate notice and misled the district court into thinking there were no paternal relatives with an interest in having guardianship over child. Baker and Justus argue that they have proven the same by clear and convincing evidence, and the family court erred by failing to consider such fraud and allowing the Kuffners to benefit from such fraud, and because of such fraud it is in child's best interest to be with Baker.

During oral argument, Baker and Justus repeatedly emphasized that the family court erred by failing to make factual findings about whether fraud took place, thus depriving the Kuffners of a legal basis for maintaining physical

possession of child pursuant to the guardianship, and without such a right to possession, possession should naturally fall to Baker as a blood relative, as relatives are favored for custody over non-relatives who are not *de facto* custodians. Baker and Justus maintained that it would be improper to use the court system to perpetuate a fraud, and that it could not be in child's best interest "to remain with her captors."

In contrast, in their brief the Kuffners emphasized that after Lonnie died that Nicole relied on the Kuffners for support and that child was a part of the Kuffners' family. During oral argument, the Kuffners disagreed with Baker and Justus that they should be preferred based on being blood relations of child, arguing there was not a statutory preference for relatives and asserting that "sometimes family is a chosen family."

Regarding notice to relatives in a petition for appointment as guardian, KRS 387.025 states in relative part:

> (3) The petition for appointment shall set forth the following:
> . . .
>
> > (d) . . . if the minor has no living parent, *the names and addresses of the minor's adult next of kin*;
> . . .
>
> (5) The District Court shall appoint a time for hearing the petition and application. Notice of the time and place of the hearing shall be given not less than five (5)

-12-

days prior to the hearing . . . *to each of the persons or entities required to be named in the petition*. Proof of notice shall be made in accordance with the provisions of KRS 395.016. Notice may be waived as provided in KRS 395.016.

(Emphasis added.)

We do not discount that Baker's and Justus' allegations about fraud in the district court guardianship action are a serious matter. It is undisputed that Baker and Justus were omitted from the petition and did not receive appropriate notice; however it is disputed whether their omission amounts to a fraud upon the district court which could be properly corrected pursuant to CR 60.02(d). During oral argument, the Kuffners admitted that Baker and Justus were erroneously omitted from the petition for guardianship and should have been listed as next of kin, but denied that this was done for the purpose of depriving Baker or Justus from being considered as guardians of child or constituted fraud.[5] However, the legal import of the lack of proper notice has yet to be decided as *Baker v. Kuffner*, No. 21-XX-000015 is not final, and even if it were, the matter would still need to be resolved by the district court.

Baker and Justus conflate the district court and family court actions and seek for our Court to make rulings upon the appropriateness of the proceedings

---

[5] The Kuffners argued that they believed and relied on child's paternal aunt to give Baker and Justus notice. We note that such "notice" if it in fact took place, would not be in conformance with the requirements of KRS 387.025(5).

-13-

that took place in district court even though an appeal from such proceedings is not before us. Additionally, most of the district court record was never admitted into the family court record and, therefore, was not examined by the family court.

We do not believe it would have been appropriate for the family court to rule upon whether the guardianship decision was correct. At the time of the family court's hearing on the motion for immediate possession, while Baker's and Justus' June 9, 2020 motion seeking to remove the Kuffners as child's guardian was pending before the district court, it had not been ruled upon.

The appropriate place to challenge whether the Kuffners' actions in the guardianship proceeding before the district court was fraudulent was before the district court itself. While Baker and Justus did that, this matter has yet to be finally resolved.

Should the circuit court order remanding for a consideration of fraud be finalized, the district court would still need to make a ruling on whether there was fraud and, if so, whether it justifies setting aside the guardianship. Once a ruling is made, it may be considered by the family court in ruling on custody.

We do not believe it would be appropriate for the family court to essentially make a ruling either upholding or invalidating the district court's prior action, as such a ruling could be inconsistent with an eventual final ruling in that matter. Instead, it is appropriate for the family court to treat the district court's

guardianship order as valid and an appropriate basis for physical possession of child until and unless it is overturned.

Additionally, ruling on whether the guardianship was fraudulent or not would have been a difficult decision for the family court to make considering that the only evidence of record regarding fraud in this action is Baker's testimony. We note that even had fraud in the guardianship matter been proven, that would not automatically mean that the family court erred in failing to award Baker immediate possession of child.

As established in *Galloway v. Pruitt*, 469 S.W.2d 556, 558 (Ky. 1971), "a litigant seeking the right to immediate possession of a child may institute an action by filing a complaint asserting legal entitlement to the immediate custody and possession of the child and, by appropriate motion, obtain a forthwith hearing as if the principles of habeas corpus were applicable." Such a proceeding can, if the family court feels it is appropriate, lead to a full consideration of custody. *Id.*

Baker did not institute a separate action for immediate possession but instead filed a motion for immediate possession within a custody proceeding. However, her motion sought the same relief.

An action or motion for immediate possession, is similar to the filing of a petition for immediate entitlement to custody of a child pursuant to KRS

620.110[6] after a child has been removed from the home by the Cabinet for Health and Family Services, as both types of actions are considered custody actions in the nature of *habeas corpus*. *Compare Galloway*, 469 S.W.2d at 557-59 (noting an action for immediate possession is not a "pure[,]" "true[,]" or "traditional" *habeas corpus* action, because while it should be handled expeditiously, none of the procedural rules of *habeas corpus* apply and a full custody hearing may be held in the court's discretion), *with B.D. v. Commonwealth, Cabinet for Health and Family Services*, 426 S.W.3d 621, 623 (Ky.App. 2014) (explaining that petitions pursuant to KRS 620.110 are original actions of a *habeas corpus* type).

Therefore, we apply the same standard of review to both types of cases. In reviewing such a *habeas corpus* type action, we consider whether the family court's findings are clearly erroneous, whether it applied the correct law or whether it abused its discretion. *C.K. v. Cabinet for Health and Family Services*, 529 S.W.3d 786, 789 (Ky.App. 2017). We believe that the family court made an implicit finding that the Kuffners by reason of the guardianship order had a valid basis for maintaining possession of child, and this was appropriate given the ongoing validity of the guardianship order at that time.

---

[6] KRS 620.110 provides in relevant part that: "Any person aggrieved by the issuance of a temporary removal order may file a petition in Circuit Court for immediate entitlement to custody[.]"

In reviewing the family court's decision, we believe it appropriately focused on the best interest of child as there was a valid guardianship order in effect which gave the Kuffners some right to possession of child and custody over child had yet to be determined. As noted in *Hinton v. Byerly*, 483 S.W.2d 138, 143 (Ky. 1972), a case addressing the right to immediate possession of a child, "in determining the rights of the contesting parties the welfare of the child is never an irrelevant issue." Similarly, in *C.K.*, 529 S.W.3d at 788-89, a case brought for immediate entitlement to custody under KRS 620.110, the focus was on the child's best interest above the father's custodial rights after the mother died.

While *Miller v. Harris*, 320 S.W.3d 138 (Ky.App. 2010), involved a custody dispute between a maternal grandmother and a great-aunt and uncle, rather than an immediate possession of a child dispute, it is instructive. In *Miller* the Court opined:

> When the choice of custodian is between non-parents, as in this case, Kentucky courts seek the result that is in the best interests of the child. Kentucky courts have not expressed a preference for relatives in non-parent custody cases. *Williams v. Phelps*, 961 S.W.2d 40 ([Ky.App.] 1998).

*Id.* at 141 (footnote omitted noting there was no *de facto* custodian).[7]

---

[7] While neither party has a right to possession of child through a custody order, the Kuffners have more legal right to possess child under the district court's order of guardianship than Baker and Justus have based on blood.

KRS 403.270(2), which explains how custody should be determined, hinges such determinations on the best interest of the child. We provide the portions of that statute which are relevant to custody determinations between nonparents when neither are *de facto* custodians.[8]

> The court shall determine custody in accordance with the best interests of the child . . . . The court shall consider all relevant factors including:
>
> (a) The wishes of the child's parent or parents . . . as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian . . . ;
>
> (c) The interaction and interrelationship of the child with . . . any other person who may significantly affect the child's best interests;
>
> (d) The motivation of the adults participating in the custody proceeding;
>
> (e) The child's adjustment and continuing proximity to his or her home, school, and community; [and]
>
> (f) The mental and physical health of all individuals involved[.]

KRS 403.270(2).

---

[8] As the Kuffners did not argue at this juncture of the litigation that they qualified as *de facto* custodians, the family court would have no reason to consider provisions relating to *de facto* custodian status. This should not be interpreted as being a ruling on our part about an issue that is not before us.

In interpreting this statute, the Court in *Miller* explained:

> KRS 403.270 directs the trial court to consider "relevant factors." Importantly, it does not restrict the court's consideration to events occurring within the children's lives or within a particular span of time. Thus, any factor that affects a potential custodian's "relationship to the child" is to be considered.

320 S.W.3d at 144. Therefore, some factors for consideration could include: (1) the Kuffners' conduct in the district court guardianship matter (especially had Baker and Justus filed the complete certified district court record so that it could be admitted into evidence as they were given the opportunity to do, rather than just the application for appointment);[9] (2) Casey's actions as executor of Lonnie's and Nicole's estates; (3) the Kuffners' actions as trustees for child and how they used or did not use her funds on her behalf;[10] (4) the Kuffners' relationship with child's parents and child's other relatives; (5) the Kuffners', Baker's, and Justus' roles in child's life before the death of Nicole; (6) the Kuffners', Baker's, and Justus'

---

[9] We note that there is a distinction between Baker and Justus seeking to challenge the Kuffners' right to possession by essentially seeking a ruling from the family court that fraud vitiated the guardianship order, and considering the underlying circumstances surrounding the way that order was obtained.

[10] It appears that Baker and Justus have not yet asked for an accounting or audit regarding how any funds belonging to child have been used by the Kuffners. This could provide evidence for or against Baker's and Justus' argument that the Kuffners were motivated by profit in seeking to become child's guardians. During oral argument, Baker and Justus indicated that child does have an independent conservator overseeing the confidential settlement account child has due to the wrongful death case regarding Lonnie, but does not have a conservator for other assets. The Kuffners noted that child has social security in a guardianship account and has a 529 plan.

-19-

current relationship with child; and (7) how child is doing while in the Kuffners' physical possession.

An application of the best interest test to determine whether a father was entitled to the immediate possession of his child was explored in *C.K.* In that case, after M.K.'s mother and siblings were killed in a fire, the Cabinet took temporary custody of M.K. and placed her with her grandmother, and then the circuit court denied father's petition for immediate custody pursuant to KRS 620.110. *C.K.*, 529 S.W.3d at 788-89. The Court determined that substantial evidence supported the circuit court's findings of fact and ultimate ruling regarding the child's best interest, explaining as follows:

> The circuit court correctly held, and it was uncontested, that Father had not seen his daughter in a matter of years, that M.K. was close to grandmother, and that M.K. was well-adapted and familiar with her school and other surroundings in Maysville. Testimony, including that of Father, supported these findings. With the best interests of M.K. in mind, considering the trauma through which she had recently lived and the coming adjustments, to her mother's absence and her Father's presence, we cannot deem erroneous the circuit court's intention to ease M.K. – a child of eight – into this new reality. Not only does the evidence of record support the circuit court's conclusions; this seems precisely the situation where the legal balance of which we speak *supra*, between parents' rights and the protection of children, must be struck in favor of the latter.

*Id.* at 790.

-20-

In *C.K.*, the child's best interest was elevated over the father's right to possession given the situation. Like M.K., child has experienced a significant recent trauma due to the death of her mother and appears to be in a placement where she feels safe. This is even more important considering child's tender age of four at the time of the hearing (compared to M.K. who was eight), and the amount of time she had spent with the Kuffners, both before and after her mother's death.

In comparison, while Baker has been involved with child, at the time of the hearing she had not spent nearly the same amount of time with child as the Kuffners had. While this is not Baker's fault, as she lives in a different city from child and after mother's death the Kuffners were granted guardianship over child, it is the reality of the situation.[11]

The best interests of the children were also considered in *Scott v. Scott*, 445 S.W.2d 871 (Ky. 1969), an immediate possession case that did not involve Cabinet removal. In *Scott*, the Court agreed with the family court that the grandparents acted improperly be seizing the children of their deceased son away from their mother simply because the children's mother proposed to move away. In doing so, the Court noted that before returning the children to their mother "the

---

[11] Although we noted the restriction of grandmother's visitation by a subsequent order, it is irrelevant for our review. Additionally, the restriction was temporary. It would behoove all the adults involved in child's life to make every effort to get along and to avoid antagonizing each other, however we can understand feelings running "hot" given all that has transpired.

trial court specifically found" that "[t]here [was] no immediate threat to the children's wellbeing[.]" *Id*. at 873. By affirming such a decision, the Court agreed that the children's best interest was in being returned to their mother and that her plan to move was an appropriate parental decision, not a threat to the children's well-being and did not justify someone else having custody.

Here the family court found that it would not be in child's best interest to be immediately placed with Baker. The family court found that "the child's well being is not in danger with the Kuffners" and pointed out that it did not want to disturb or disrupt child's life, especially given child's young age and the trauma she had experienced. Essentially, while the family court recognized Baker loved child, the family court identified that removing child could be traumatic for child.

The family court did not err in focusing on what was in child's best interest and making a ruling that an immediate removal to Baker's physical possession was not in child's best interest as this was amply supported by the evidence. Changing custody through a motion for immediate possession is rarely granted without a full-blown custody hearing unless children were seized away from their fit parents who had been raising them. When in doubt, family courts appropriately do not want to disrupt the *status quo* and cause more upheaval to children of tender years. While we acknowledge that this may seem unfair to Baker as she alleges she was precluded from taking possession of child from the

outset by a fraud perpetrated against her and the district court, the best interest of child at the time the possession hearing occurred is paramount.

We note that this decision is not an ultimate ruling on custody and does not preclude the family court from later deciding that placement with Baker and/or Justus is appropriate. *See C.K.*, 529 S.W.3d at 790-91 (pointing out the temporary nature of the custody order and acknowledging that the father who was participating in visitation could prove to be "a worthy custodian in the future"). We emphasize that this decision has *no* precedential value in resolving who should ultimately gain custody of child and we express no opinion on that ultimate issue which is still pending before the family court. Our decision is limited to the very narrow grounds relevant to this *habeas corpus* type action.

Accordingly, we affirm the family court's denial of Baker's motion for immediate possession of child.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Katie Brophy
Nolia Batey
Louisville, Kentucky

ORAL ARGUMENT FOR APPELLANTS:

Nolia Batey
Louisville, Kentucky

BRIEF FOR APPELLEES:

Sandra B. Hammond
Louisville, Kentucky

ORAL ARGUMENT FOR APPELLEES:

Sandra B. Hammond
Louisville, Kentucky